**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| CAFE AGAVE, INC., | |
| Plaintiff, | |
| v. | Case No. 1:23-cv-00032 |
| CROWN VALLEY WINERY, INC., *et al.*, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANT CROWN VALLEY WINERY, INC.'S
PARTIAL MOTION TO DISMISS AND SUGGESTIONS IN SUPPORT**

Defendant Crown Valley Winery, Inc. ("Crown Valley"), through counsel and pursuant to Federal Rules 7(b), 9(b), and 12(b)(6), moves to dismiss Count I ("Fraudulent Concealment"), Count II ("Recklessness"), Count III ("Fraudulent Inducement"), and Count VI ("Breach of Implied Warranty of Good Faith") of Plaintiff's Complaint ("Complaint") for failure to state a claim upon which relief can be granted, on the following specific grounds:

A. Counts I ("Fraudulent Concealment"), II ("Recklessness"), and III ("Fraudulent Inducement") should be dismissed pursuant to the economic loss doctrine.

B. Count I ("Fraudulent Concealment") should be dismissed because fraudulent concealment is not an independent claim.

C. Count II ("Recklessness") should be dismissed because "recklessness" is not a recognized cause of action in the commercial context.

D. Counts I ("Fraudulent Concealment") and III ("Fraudulent Inducement") should be dismissed because Plaintiff has not alleged fraud with the requisite specificity/particularity.

E. Count VI ("Breach of Implied Warranty of Good Faith") should be dismissed because breach of the UCC's implied warranty of good faith is not a separate cause of action under the UCC.

1

F. Count VI ("Breach of Implied Warranty of Good Faith") should also be dismissed because Section 400.1-304 of the UCC does not apply to contracts that are predominantly service contracts.

G. Count VI ("Breach of Implied Warranty of Good Faith") should also be dismissed because implied contract claims only arise absent express contracts.

H. Count VI ("Breach of Implied Warranty of Good Faith") should also be dismissed because breach of the implied obligation of good faith and fair dealing – even under the common law – is not a separate cause of action.

## SUGGESTIONS IN SUPPORT

### Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001) (*quoting* Neitzke v. Williams, 490 U.S. 319, 326-27 (1989)). In addressing a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. United States *ex rel.* Ambrosecchia v. Paddock Laboratories, LLC, 855 F.3d 949, 954 (8th Cir. 2017). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the prior "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." Id. However, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. Cole v. Homier Distributing Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010) (*citing* Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

**Summary of Plaintiff's Claims**

Plaintiff Cafe Agave, Inc. ("Plaintiff"), a company specializing in coffee beverages spiked with alcohol, sued Crown Valley alleging that Crown Valley breached a co-packing agreement (entitled "Manufacturing Agreement" – *see* Complaint, Doc. 1, ¶ 6) ("Agreement") which called for Crown Valley to package certain pre-blended beverages for Plaintiff which were delivered, unpackaged, to Crown Valley. Plaintiff alleges Crown Valley allowed Plaintiff's pre-blended beverage product to become contaminated while stored in Crown Valley's tanks awaiting packaging, and that, as a result, Plaintiff had to destroy product that was canned and packaged at Crown Valley. Plaintiff claims, among other things, that these alleged events caused damage to Plaintiff's business relationship with Pabst Brewing Company related to a potential licensing/distribution agreement between Plaintiff and Pabst. *See generally* Complaint, Doc. 1. Plaintiff has asserted six purported causes of action against Crown Valley – "Fraudulent Concealment" (Count I), "Recklessness" (II), "Fraudulent Inducement" (III), "Breach of Contract" (IV), "Breach of Express Warranty" (V), and "Breach of Implied Warranty of Good Faith" (VI). *See generally* Complaint, Doc. 1.

**Argument**

**A. Counts I ("Fraudulent Concealment"), II ("Recklessness"), and III ("Fraudulent Inducement") should be dismissed pursuant to the economic loss doctrine.**

Under Missouri law, the economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. Trademark Medical, LLC v. Birchwood Laboratories, Inc., 22 F. Supp 3d 998, 1002 (E.D. Mo. 2014); Captiva Lake Invs., LLC v. Ameristructure, Inc., 436 S.W.3d 619, 628 (Mo. Ct. App. E.D. 2014). Recovery in tort for purely economic damages is limited to cases of personal injury, damage to property other than that sold, or destruction of property sold due to a violent occurrence. Captiva Lake, 436 S.W.3d at

628. Economic loss includes cost of repair/replacement of defective property that is the subject of a transaction, commercial loss for inadequate value, loss of profits, and diminution in value of a product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. Dannix Painting, LLC v. Sherwin-Williams Co., 732 F.3d 902, 905 (8th Cir. 2013).

The policy behind the economic loss doctrine is set forth in the case law. "In essence, the economic loss […] doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." Dannix, 732 F.3d at 906 (internal citation omitted). "[A]lthough tort law is an appropriate vehicle for providing a recovery for physical injury to persons or to other property caused by defective goods, tort law should not be held to undermine the law of sales' balancing of the relationship between buyers and sellers regarding whether or not, and how well, products work." Id. (internal citation omitted). If tort principles infringe into the contract/commercial arena too far, "contract law would drown in a sea of tort." E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866 (1986).

In this case, the only damages claimed by Plaintiff in its tort claims (Counts I, II, and III)[1], each of which allege fraud/concealment by Crown Valley, are economic or commercial. Paragraph 42 of the Complaint, entitled "Cafe Agave's Damages," itemizes the damages being sought by Plaintiff:

> […] Crown Valley's negligence, recklessness, fraud, willful misconduct, breach of contract and breach of warranty caused [Plaintiff] damages, including the <u>cost of lost goods</u>, <u>lost profits</u>, <u>costs of product cancellation and destruction</u>, <u>attorney's and professional fees</u> and losses related to <u>business interruption</u>, including <u>loss of a 15-year licensing agreement with Pabst, and, ultimately, the buyout</u> by Pabst of the Cafe Agave brand.

---

[1] For reasons discussed throughout this Motion, Crown Valley's position is that Counts I, II, and III do not state a claim at all. However, if they are any sort of claim at all, they are of the tort variety.

4

Complaint, Doc. 1, ¶ 42. Plaintiff does not seek any of the categories of damages (personal injury, damage to property other than that sold[2], or destruction of property sold due to a violent occurrence) of the type that might otherwise rescue its tort claims from the fate of the economic loss doctrine. *See generally* Complaint, Doc. 1.

Counts I ("Fraudulent Concealment"), II ("Recklessness"), and III ("Fraudulent Inducement") are each based upon allegations of fraud, concealment, and/or misrepresentation occurring before and after the Agreement was entered into. Plaintiff's allegations in Counts I, II, and III, however, are all *related to* the Agreement that is central to this case. *See generally* Complaint, Doc. 1 (alleging Crown Valley fraudulently induced Plaintiff into the Agreement and that Crown Valley concealed information during the Agreement period). Because Plaintiff's claimed damages essentially/actually arise out of a contractual relationship, its claims are precisely the types of tort claims that the economic loss doctrine bars. "Where there are well-developed contractual remedies…, there is no need to provide tort remedies for misrepresentation. The tort remedies would duplicate the contract remedies, adding unnecessary complexity to the law. Worse, the provision of these duplicative tort remedies would undermine contract law." Dannix, 732 F.3d at 908 (internal citation omitted). The economic loss doctrine "forbids commercial contracting parties … to escalate their contract dispute into a charge of tortious misrepresentation if they could easily have protected themselves from the misrepresentation of which they now complain." Id (internal citation omitted).

Plaintiff may argue that its fraudulent inducement claim (Count III) is not barred by the economic loss doctrine because it is independent of, and arose prior to, the Agreement, but such

---

[2] This category of damages may arise where a "defective product damages *other* property." E. River S.S. Corp., 476 U.S. at 867 (emphasis added). Here, there is no alleged damage to "other" property. Plaintiff alleges its beverages were damaged, not that its beverages damaged "other" property. *See generally* Complaint, Doc. 1.

5

an argument would fail. When alleged misrepresentations concern the same subject matter that is incorporated into the parties' contract, even though they were made prior to contract formation, the claim is not independent of the contract and therefore is barred by the economic loss doctrine. Compass Bank v. Eager Rd. Assocs., LLC, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013). This Court has identified two "critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine," including:

> (1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract (*see* AKA Distrib., 137 F.3d at 1087 (alleged misrepresentations concerned 'a term of the contract' and were therefore not actionable)) and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud (*see* Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (citing cases) (to be actionable, a fraud claim must 'seek special damages that are caused by the misrepresentation and unrecoverable as contract damages')).

Compass, 922 F. Supp. 2d at 827.

None of Plaintiff's fraud allegations survive this analysis. Plaintiff's allegations of pre-contract fraud are fairly summarized as follows – that Crown Valley made misrepresentations related to its Quality Assurance Program ("QAP") and related to its intent or promise to sample and test the beverages to be packaged at its facility. *See, e.g.*, Complaint, Doc. 1, ¶¶ 19, 25, 41. The subject matter of these alleged misrepresentations (the standards to be utilized in performing the Agreement) were incorporated within the four corners of the Agreement, concern terms of the Agreement, and are therefore not actionable. Indeed, Plaintiff alleges the Agreement specifically addressed the standards to be utilized in performing the Agreement. *See, e.g.,* Complaint, Doc. 1, ¶ 21 (alleging "[t]he Agreement further required Crown Valley to utilize good manufacturing practices and use the same degree of care in making and storing the beverages that Crown Valley uses in making and storing its own products and in all events in accordance with acceptable industry practices and Café Agave's specifications"). When a contract term contains or conflicts

with the alleged misrepresentation, the contract term controls, and there is no fraudulent misrepresentation claim. Superior Edge, Inc. v. Monsanto Co., 44 F.Supp.3d 890, 904 (D. Minn. 2014 (applying Missouri law); *see also* Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996) ("intentionally false statements…indicating [a party's] intent to perform under the contract [are] not sufficient to support a claim of fraud").

Regarding the second factor of the Compass analysis, Plaintiff does not allege that it suffered *additional* damages outside the contract as a result of the alleged fraud. Again, Plaintiff seeks the same exact damages for each of its counts/claims:

> […] Crown Valley's **negligence, recklessness, fraud, willful misconduct, breach of contract <u>and</u> breach of warranty** caused [Plaintiff] damages, including the cost of lost goods, lost profits, costs of product cancellation and destruction, attorney's and professional fees and losses related to business interruption, including loss of a 15-year licensing agreement with Pabst, and, ultimately, the buyout by Pabst of the Cafe Agave brand.

Complaint, Doc. 1, ¶ 42. Nowhere in the Complaint does Plaintiff identify any type of damage specifically tied to one of its several counts. *See generally* Complaint, Doc. 1. (Even if Plaintiff were to contend that it suffered damages from alleged fraud beyond what it allegedly suffered due to an alleged breach of contract, "the economic loss doctrine encompasses consequential economic loss such as loss of profits and loss of good will or business reputation." Trademark, 22 F.Supp.3d at 1004.) Because the subject matter of the alleged pre-contract representations was specifically incorporated into the Agreement, and because Plaintiff does not allege that it suffered *additional* damages outside the contract as a result of any alleged fraud, Plaintiff's claim for fraudulent inducement is barred by the economic loss doctrine.

Plaintiff's allegations concerning post-contract concealment further support dismissal of its tort claims pursuant to the economic loss doctrine. Plaintiff's allegations of post-contract fraud essentially amount to a complaint that Crown Valley concealed, during the Agreement period,

7

contamination and out-of-specification beverages.  *See, e.g.*, Complaint, Doc. 1, ¶¶ 13, 29, 30, 33, 39.  Any alleged concealment in this regard (which Crown Valley vehemently denies) relates directly to the quality and character of the product at issue.  When a representation or omission concerns the quality, character, or safety of goods, the economic loss doctrine bars a fraud claim that is substantially redundant with a warranty claim (like the one Plaintiff has made in Count V).  Trademark, 22 F.Supp.3d at 1003.

Plaintiff's fraud allegations against Crown Valley are all just another way of saying Crown Valley breached the Agreement.  The same damages are sought through each theory alleged by Plaintiff.  Plaintiff cannot legitimately argue that any representation made by Crown Valley is independent of the Agreement.  Because Plaintiff is clearly seeking (in Counts I, II and III) to recover in tort for economic losses that are contractual in nature, and because Plaintiff is not claiming personal injury, damage to property other than that sold, or destruction of property sold due to a violent occurrence, the economic loss bars Counts I, II, and III and Counts I, II, and III should be dismissed.

### B. Count I ("Fraudulent Concealment") should be dismissed because fraudulent concealment is not an independent claim.

Count I ("Fraudulent Concealment") does not state a cognizable claim under Missouri law.  Complaint, Doc. 1, Count I.  Under Missouri law, there is no independent common law cause of action for fraudulent concealment.  Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd., 181 F.Supp. 3d 618, 640 (E.D. Mo. 2016) ("Missouri courts have not recognized a separate claim of fraudulent concealment."); *see also* Anderson v. R.J. Reynolds Tobacco Co., 2021 WL 3525165, at *5 (E.D. Mo. August 11, 2021) (citing Nestle and holding, "[u]nder Missouri law, fraudulent concealment is not a separate and distinct claim for relief…").  Because Missouri law does not recognize a separate cause of action for fraudulent concealment, Count I should be dismissed.

**C. Count II ("Recklessness") should be dismissed because "recklessness" is not a recognized cause of action in the commercial context.**

Count II of the Complaint ("Recklessness") essentially restates allegations of Count I and assigns them a different title. *See* Complaint, Doc. 1, Counts I and II. Although some Missouri cases seem to recognize "recklessness" as an independent tort, distinguishable from negligence and intentional wrongdoing, the Missouri Supreme Court has not explicitly recognized such a separate cause of action. *See* § 2:23. Recklessness as a cause of action, 34 Mo. Prac., Personal Injury and Torts Handbook § 2:23 (2022 ed.). The Missouri Supreme Court, in the personal injury (vehicle accident) case of Nichols v. Bresnahan, 357 Mo. 1126, 1130-31 (1948), explained:

> Negligence is one kind of tort, an unintentional injury usually predicated upon failure to observe a prescribed standard of care, while a willful, wanton, reckless ***injury*** is another kind of tort, an intentional ***injury*** often based upon an act done in utter disregard of the consequences. Reckless conduct may be negligent in that it is unreasonable but it is and must be something more than unreasonable, it must contain a ***risk of harm*** to others in excess of that necessary to make the conduct unreasonable and therefore, negligent. The actor's … conduct is in reckless disregard of the ***safety*** of another if he intentionally does and act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an ***unreasonable risk of bodily harm*** to the other but also involves a high degree of probability that substantial harm will result to him. The two kinds of tortious conduct differ not only in the degree of the actor's mental state but in the substantial fact and right that contributory negligence is no defense to most instances of willful, wanton, reckless ***injury***.

Nichols, 357 Mo. 1126, 1130–31 (internal citations and quotation marks omitted) (emphasis added).

Based upon the undersigned's research, any arguable authority for the existence of a tort called "recklessness" only exists in the personal injury realm. Defense counsel has not located any authority for the proposition that a cause of action for "recklessness" exists anywhere outside the context of personal injury cases. *See, e.g.*, DeCormier v. Harley-Davidson Motor Company Group, Inc., 446 S.W.3d 668 (Mo. 2014) (which "assumed without deciding" – in a bodily injury

case – that Missouri recognizes an action for recklessness); McNearney v. LTF Club Operations Company, Inc., 486 S.W.3d 396 (Mo. Ct. App. E.D. 2016) (relying on DeCormier – in another bodily injury case – to declare that Missouri does recognize the tort of recklessness); Dilley v. Valentine, 401 S.W.3d 544 (Mo. Ct. App. W.D. 2013) (recognizing – in another bodily injury case – cause of action for recklessness); Hatch v. V.P. Fair Foundation, Inc., 990 S.W.2d 126, 139 (Mo. Ct. App. E.D. 1999) (recognizing – in another bodily injury case – cause of action for recklessness).

While not binding, secondary sources have reached the same conclusion. "The tort of recklessness occurs when the actor intentionally does an act or fails to do an act that it is his duty to the other to do, knowing or having reason to know of facts that would lead a reasonable person to realize that the actor's conduct not only creates an unreasonable risk of ***bodily harm*** to the other but also involves a high degree of probability that substantial harm will result." § 4:9. The tort of recklessness, 34 Mo. Prac., Personal Injury and Torts Handbook § 4:9 (2022 ed.) (emphasis added).

Because Missouri law does not appear to recognize a cause of action for "recklessness" outside of the personal injury context, Count II should be dismissed.

**D. Count I ("Fraudulent Concealment") and Count II ("Fraudulent Inducement") should be dismissed because Plaintiff has not alleged fraud with the requisite specificity/particularity.**

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud ... a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).

> The circumstances of the fraud include such matters as the **time**, **place** and **contents** of false representations, as well as the **identity** of the person making the misrepresentation and **what was obtained or given up** thereby. Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.

10

Nestle, 181 F. Supp. 3d at 630 (citations and punctuation marks omitted) (emphasis added).

Plaintiff, in its Complaint, does not sufficiently allege the time, place, and/or identity of the person(s) making any alleged misrepresentation(s). The allegations of the Complaint referring to or mentioning alleged fraudulent concealment or fraudulent inducement are ¶¶ 12, 20, 25, 29, 30, 39, 40, 41, 42, 44-56, and 64-70. Complaint (Doc. 1). Not one of these paragraphs mentions a specific time of an alleged concealment or statement. Complaint (Doc. 1), ¶¶ 12, 20, 25, 29, 30, 39, 40, 41, 42, 44-56, 64-70. While some of these paragraphs refer to time ranges or periods in relation to other events, Plaintiff does not allege that any fraudulent statement/concealment occurred on a specific date. Complaint (Doc. 1), ¶¶ 12, 20, 25, 29, 30, 39, 40, 41, 42, 44-56, 64-70. Moreover, not one of these allegations refer to a specific place of an alleged statement. Complaint (Doc. 1), ¶¶ 12, 20, 25, 29, 30, 39, 40, 41, 42, 44-56, 64-70. Only one paragraph (¶ 64) provides specific names (Bryan Siddle and Jeremy Gilbert), but again, no time or place of alleged fraud by Mr. Siddle or Mr. Gilbert is provided. Complaint (Doc. 1), ¶ 64. Because Plaintiff has not stated with particularity the circumstances constituting alleged fraud, Counts I ("Fraudulent Concealment") and III ("Fraudulent Inducement") should be dismissed pursuant to Federal Rule of Civil Procedure 9(b).

> **E. Count VI ("Breach of Implied Warranty of Good Faith") should be dismissed because breach of the UCC's implied warranty of good faith is not a separate cause of action under the UCC.**

Count VI of the Complaint ("Breach of Implied Warranty of Good Faith") is based on Section 400.1-304 of the Missouri Uniform Commercial Code ("UCC"). Complaint, Doc. 1, ¶ 92 (alleging "Section 400.1-304 of the Missouri Uniform Commercial Code imposes a legal duty or obligation on a contractual party to exercise good faith to carry out the obligations and terms of a contractual agreement"). However, Count VI should be dismissed because breach of the implied

warranty of good faith is not a separate cause of action under the UCC. "This section [400.1.304] does not support an independent cause of action for failure to perform or enforce in good faith." R.S.Mo. § 400.1-304, *official comment*. The "doctrine of good faith … does not create a separate duty of fairness and reasonableness which can be independently breached." Id. Count VI should be dismissed because it does not state a recognized claim under Missouri law.

> **F. Count VI ("Breach of Implied Warranty of Good Faith") should also be dismissed because Section 400.1-304 of the UCC does not apply to contracts that are predominantly service contracts.**

Plaintiff's allegation in paragraph 92 of the Complaint states "Section 400.1-304 of the Missouri Uniform Commercial Code imposes a legal duty or obligation on a contractual party to exercise good faith to carry out the obligations and terms of a contractual agreement" is an extraordinarily (and overly) broad statement. Section 400.1-304 *actually* states:

> Every contract or duty **within [the UCC]** imposes an obligation of good faith in its performance and enforcement.

R.S.Mo. § 400.1-304 (emphasis added). This qualification ("within [the UCC]"), ignored by Plaintiff, is a decisive one.

Plaintiff has not brought, and cannot bring, a viable claim for violation of Section 400.1-304 because the duties and obligations Plaintiff alleges to have been violated do not arise "within" the UCC. The UCC only governs limited types of commercial subject matters and transactions. Specifically, the articles within Chapter 400 (the UCC) govern sales and leases, negotiable instruments, bank deposits, collections, and funds transfers, letters of credit, warehouse receipts, bills of lading and other documents of title, investment securities, and secured transactions. *See generally* R.S.Mo. § 400. Missouri law is clear that the UCC's sales article only applies to transactions in goods. Missouri Farmers Ass'n. v. McBee, 787 S.W.2d 756, 760 (Mo. Ct. App. 1990); *see also* MO. REV. STAT. § 400.2-102. It does not apply to service transactions. Missouri

Farmers, 787 S.W.2d at 760-61.  More specifically, and more directly applicable here, "implied warranties do not apply to service contracts."  Missouri Farmers, 787 S.W.2d at 761.

In this case, Plaintiff does not allege or establish the existence of a transaction governed by the UCC because the allegations in the Complaint establish the contrary – that the relationship between the parties involved predominantly services, not goods.  Missouri law holds that in such situations, the contract will be construed as a service contract falling outside the UCC, not a goods contract.  In a contract which calls for both goods to be furnished and services to be performed, "the test for whether the UCC applies is whether the predominant purpose of the contract is to render services with goods incidentally involved, or to transact a sale with labor incidentally involved."  U.S. Neurosurgical, Inc. v. St. Luke's Cancer Inst., LLC, 328 S.W.3d 234, 237 (Mo. Ct. App. 2010).  Admittedly, the allegations of the Complaint arguably include claims related to both services and transactions in goods.[3]  *See, e.g.*, Complaint, Doc. 1, ¶ 21 (alleging the contract between the parties provided that Crown Valley would package products for Plaintiff – *a service*); *see also* Complaint, Doc. 1, ¶ 73 (alleging the contract between the parties included an obligation of Plaintiff to place purchase orders with Crown Valley for beverages once packaged – arguably *a transaction in goods*).  But in this case, we are very clearly dealing with a contract having a massively predominant purpose of rendering services, with goods only incidentally involved.

First, the very title of the subject contract – "Manufacturing Agreement" – strongly suggests that the contract's predominate purpose was for services.  (The contract is not entitled "Sales Agreement" or something similar.)  But more importantly, Plaintiff's allegations throughout

---

[3] There is no allegation related to any lease, negotiable instrument, bank deposit, collections, funds transfer, letter of credit, warehouse receipt, bill of lading, other document of title, investment securities, or secured transaction.  *See generally* Complaint, Doc. 1.

the Complaint overwhelmingly establish that the predominate purpose of the Agreement, as readily alleged by Plaintiff, was for Crown Valley to provide services to Plaintiff:

- Complaint, Doc. 1, ¶ 7 (alleging beverages were *produced* under the Agreement);

- Complaint, Doc. 1, ¶ 10 (alleging Crown Valley *produces*, *manufactures*, and *packages* beverages);

- Complaint, Doc. 1, ¶ 11 (alleging Crown Valley *produced* beverages for Plaintiff);

- Complaint, Doc. 1, ¶ 14 (referring to the *production* at Crown Valley);

- Complaint, Doc. 1, ¶ 18 (alleging Plaintiff was referred to Crown Valley based on Crown Valley's knowledge in *producing and canning* beverages);

- Complaint, Doc. 1, ¶ 19 (alleging Plaintiff sought to qualify Crown Valley as a *co-packer* and that Crown Valley presented a program regarding *production*);

- Complaint, Doc. 1, ¶ 21 (alleging the Agreement provided that Crown Valley would *produce and package* products for Plaintiff and that Crown Valley was to use good *manufacturing* practices and care in *making* and *storing* the beverages);

- Complaint, Doc. 1, ¶ 24 (alleging beverages were *transferred* by Crown Valley into tanks and *canned* at Crown Valley);

- Complaint, Doc. 1, ¶ 25 (alleging Crown Valley *canned* and *sampled* beverages);

- Complaint, Doc. 1, ¶ 26 (alleging Crown Valley *sent samples* to a laboratory);

- Complaint, Doc. 1, ¶ 27 (alleging Crown Valley *sent samples* to a laboratory);

- Complaint, Doc. 1, ¶ 29 (alleging Crown Valley *canned* beverages);

- Complaint, Doc. 1, ¶ 30 (alleging Crown Valley *canned* beverages);

- Complaint, Doc. 1, ¶ 31 (referring to Crown Valley as the *canner*, not supplier);

- Complaint, Doc. 1, ¶ 32 (alleging damage arising from Crown Valley's *canning*);

- Complaint, Doc. 1, ¶ 33 (alleging Crown Valley *sent* lab results to Plaintiff);

- Complaint, Doc. 1, ¶ 37 (alleging Crown Valley *canned* beverages);

14

- <u>Complaint</u>, Doc. 1, ¶ 38 (alleging Crown Valley did the *canning*);

- <u>Complaint</u>, Doc. 1, ¶ 39 (alleging Crown Valley should have *ceased canning* beverages);

- <u>Complaint</u>, Doc. 1, ¶ 40 (alleging Crown Valley *continued canning*);

- <u>Complaint</u>, Doc. 1, ¶ 41 (alleging Crown Valley should have *performed testing*);

- <u>Complaint</u>, Doc. 1, ¶ 42 (alleging Plaintiff's damages resulted from Crown Valley's *failure to properly sterilize* lines, *failure to conduct testing*, and *canning of* beverages);

- <u>Complaint</u>, Doc. 1, ¶ 44 (referring to Crown Valley as Plaintiff's *co-packer/co-manufacturer*);

- <u>Complaint</u>, Doc. 1, ¶ 46 (alleging Crown Valley had to abide by good *manufacturing* practices and *produce* beverages in compliance with specifications);

- <u>Complaint</u>, Doc. 1, ¶ 47 (alleging Crown Valley was *canning* the beverages);

- <u>Complaint</u>, Doc. 1, ¶ 48 (alleging Crown Valley continued *canning* and completed *canning* the beverages);

- <u>Complaint</u>, Doc. 1, ¶ 50 (alleging Crown Valley completed *canning*);

- <u>Complaint</u>, Doc. 1, ¶ 51 (alleging Crown Valley was *canning*); and

- <u>Complaint</u>, Doc. 1, ¶ 52 (alleging Crown Valley *canned* beverages).

Plaintiff's allegations throughout the remainder of the Complaint (Counts I-VI) continue to repeatedly reference *services* allegedly provided by, or to be provided by, Crown Valley under the Agreement, such as producing, manufacturing, making, canning, packing, storing, and performing test-related functions. *See* <u>Complaint</u>, Doc. 1, ¶¶ 58, 59, 60, 61, 64, 66, 67, 73, 75, 76, 77, 78, 80, 83, 85, 86, 87, 89, 93, 94. In contrast to the aforementioned 49 paragraphs discussing/alleging services, Plaintiff's entire Complaint contains a mere three allegations relating to its practice – *after* the *services* were performed by Crown Valley – of periodically placing

15

purchase orders with Crown Valley for the beverages that Crown Valley had *packaged* and was *storing* pending receipt of such an order. Complaint, Doc. 1, ¶¶ 73, 74, 84. But even those three allegations do nothing to nudge the relationship between the parties closer to the ambit of the UCC. As is clear from the Complaint, all of Plaintiff's theories of liability against Crown Valley relate directly to *services* allegedly provided or to be provided by Crown Valley. They have nothing to do with purchase orders placed or to be placed after performance of such services.

In summary, the commercial relationship that Plaintiff alleges it had with Crown Valley under the Agreement is a *services* relationship. The alleged Agreement was overwhelmingly a *service* contract. The predicate for Plaintiff's purported claim of breach of implied warranty of good faith under the UCC (a transaction in goods) is not established by the Complaint, and Plaintiff's purported claim in Count VI ("Breach of Implied Warranty of Good Faith") under UCC Section 400.1-304 should be dismissed.

### G. Count VI ("Breach of Implied Warranty of Good Faith") should also be dismissed because implied contract claims only arise absent express contracts.

Count VI ("Breach of Implied Warranty of Good Faith") also fails to state a claim for which relief can be granted and should be dismissed because "[i]t is a well-settled principle of law that implied contract claims arise only where there is no express contract." Lowe v. Hill, 430 S.W.3d 346, 349 (Mo. Ct. App. W.D. 2014); *citing* A&L Underground, Inc. v. Leigh Const., Inc., 162 S.W.3d 509, 511 (Mo. Ct. App. W.D. 2005) (where an express contract exists, there is no need to imply one). "Accordingly, a plaintiff cannot recover under an equitable theory when [it] has entered into an express contract for the very subject matter for which [it] seeks to recover." Lowe, 430 S.W.3d at 349 (internal citation omitted).

Plaintiff may argue that Count VI is merely pleading in the alternative, but that argument fails because Count VI is explicitly tied to the terms of the Agreement. *See* Dubinsky v. Mermart

LLC, 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009), aff'd, 595 F.3d 812 (8th Cir. 2010). In Dubinsky, the court observed: "in their unjust enrichment claim[4], plaintiffs explicitly request that they be awarded interest payments due to them 'but for the breach of contract' by defendant. Thus, plaintiffs' unjust enrichment claim seeks recovery for events arising solely out of the [contract]...." Dubinsky, 2009 WL 1011503, at *5-6 (dismissing unjust enrichment claim). As in Dubinsky, Plaintiff's request for relief in Count VI here is explicitly tied to the terms of the Agreement. Plaintiff alleges that its Count VI claim arises out of "the obligations and terms of [the] contractual agreement" and that Plaintiff "did all of the significant things that the contracts [sic] required it to do…" Complaint, Doc. 1, ¶¶ 92, 93.

By Plaintiff's own pleading, its implied contract claim is based upon, and inextricably tied to, its express breach of contract claim in Count IV. Because the Agreement is an express contract, Plaintiff's implied contract claim in Count VI, purporting to arise out of the Agreement and relating to the same subject matter, is barred and should be dismissed.

**H. Count VI ("Breach of Implied Warranty of Good Faith") should also be dismissed because breach of the implied obligation of good faith and fair dealing – even under the common law – is not a separate cause of action.**

Count VI ("Breach of Implied Warranty of Good Faith") also fails to state a claim for which relief can be granted and should be dismissed because the implied obligation of good faith and fair dealing is not a separate cause of action. "In Missouri, all contracts have an implied covenant of good faith and fair dealing." Lucero v. Curators of Univ. of Missouri, 400 S.W.3d 1, 9 (Mo. Ct. App. 2013) (internal citation omitted). However, "[t]he law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties..." Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996) (internal

---

[4] Unjust enrichment is a claim founded on equitable principles whereby the law implies a contract; in other words, it is an implied contract claim, just as we have here. Lowe, 430 S.W.3d at 349.

17

citation omitted) (emphasis added) (applying Missouri law). "The implied covenant simply prohibits one party from 'depriv[ing] the other party of its expected benefits under the contract.'" Comprehensive Care, 98 F.3d at 1066 (internal citations omitted).

"The implied duty of good faith is ***not a separate claim*** beyond or divorced from the contract. The covenant ***cannot give rise to new obligations not otherwise contained in the contract's express terms***." Meridian Creative All., LLC v. O'Reilly Auto. Stores, Inc., 519 S.W.3d 839, 845 (Mo. Ct. App. 2017) (emphasis added); *citing* Comprehensive Care, 98 F.3d at 1066; Jennings v. Bd. of Curators of Missouri State Univ., 386 S.W.3d 796, 798 (Mo. App. S.D. 2012) (*quoting* Comprehensive Care); and Schell v. LifeMark Hosps. of Missouri, 92 S.W.3d 222, 230-31 (Mo. App. W.D. 2002). *See also* RGB2, Inc. v. Chestnut Plaza, Inc., 103 S.W.3d 420, 422, n.1 (Mo. Ct. App. 2003) (noting that the appellant's petition denominated "Breach of Good Faith and Fair Dealing" as a separate count from appellant's breach of contract count and remarking that "[n]o explanation was provided as to why that part of the petition was denominated differently from the basic allegations of the breach of contract claim…").

Plaintiff has denominated its claim for breach of the implied covenant of good faith and fair dealing as a separate count, which is contrary to Missouri law. For this reason, Count VI ("Breach of Implied Warranty of Good Faith") should be dismissed.

## Conclusion

WHEREFORE, Crown Valley Winery, Inc. moves this Court to dismiss Count I ("Fraudulent Concealment"), Count II ("Recklessness"), Count III ("Fraudulent Inducement"), and Count VI ("Breach of Implied Warranty of Good Faith") of Plaintiff's Complaint, and grant Crown Valley Winery, Inc. such other relief as the Court deems just and proper.

Respectfully submitted,

**BATY OTTO CORONADO SCHEER PC**

*/s/ Lee M. Baty*
Lee M. Baty                #29547MO
Patrick M. Hunt            #63898MO
4435 Main Street, Suite 1100
Kansas City, MO 64111
Telephone: (816) 531-7200
Facsimile: (816) 531-7201
lbaty@batyotto.com
phunt@batyotto.com

Kenneth A. Sprenger      #57738MO
1855 S. Ingram Mill Rd. Suite 207
Springfield, MO 65804
Telephone: (417) 281-5103
Facsimile: (417) 319-2768
ksprenger@batyotto.com

ATTORNEYS FOR DEFENDANT
CROWN VALLEY WINERY, INC.

## CERTIFICATE OF SERVICE

This certifies that the foregoing was filed with the Court via the Court's e-filing system on May 19, 2023, and that the foregoing was served by electronic mail the same date to Plaintiff's counsel of record:

Daniel E. Tranen
WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
7777 Bonhomme Avenue, Suite 1900
St. Louis, MO 63105
Telephone:(314) 930-2860
Facsimile: (314) 930-2861
daniel.tranen@wilsonelser.com
**ATTORNEY FOR PLAINTIFF**

/s/ Lee M. Baty