UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CAFE AGAVE, INC., | ) |
| Plaintiff, | ) Case No. 1:23-cv-00032 |
| v. | ) |
| CROWN VALLEY WINERY, INC.; and DOES 1-10, | ) |
| Defendants. | ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

Plaintiff Cafe Agave, Inc., ("Cafe Agave" or "Plaintiff"), respectfully submits this opposition to Defendant Crown Valley Winery, Inc.'s ("Crown Valley" or "Defendant") Partial Motion to Dismiss. Doc. 14.

## INTRODUCTION

This is an action seeking to recover from Crown Valley damages caused by Crown Valley's reckless and intentional misconduct associated with its handling of Plaintiff's Spiked Cold Brew beverage products. Crown Valley has filed a motion to partially dismiss the Complaint based upon an array of legal arguments that either misapply the law to the circumstances of this case or ignore the detailed allegations that, if proven, will clearly require the imposition of significant damages arising out of this misconduct. For the reasons explained here, each of Crown Valley's arguments fail, and its motion should therefore be denied.

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Art. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "When ruling on a motion to dismiss [under Rule 12(b)(6)], the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Id.* A district court should grant leave to amend freely when justice so requires. Fed.R.Civ.P. 15(a).

**A.    The Economic Loss Doctrine does not apply to Counts I, II, or III of Cafe Agave's Complaint because the parties' Agreement was a service contract.**

In its motion, Crown Valley argues that Counts I, II, and III of the Complaint should be dismissed pursuant to the economic loss doctrine. *See*, Doc 14. pp. 3-8. Courts have held that "[t]he economic loss doctrine prohibits <u>a commercial buyer of goods</u> from seeking to recover in tort for economic losses that are contractual in nature" and that the doctrine was judicially created to protect the integrity of the UCC bargaining process. (emphasis added). *Dannix Painting LLC v. Sherwin-Williams*, 732 F.3d 902, 905-06 (8th Cir. 2013). However, "Missouri courts have consistently held that the [economic loss] doctrine 'originated in cases arising under the [U.C.C], making it inapplicable to contracts for services.'" *ACE Am. Ins. Co. v. AERCO Int'l, Inc.*, 4:20-CV-1347, 2022 U.S. Dist. LEXIS 47189, at *14-15 (E.D. Mo. March 17, 2022) (quoting *Heartland Med., LLC v. Express Scripts, Inc.*, 4:17-CV-02873, 2018 U.S. Dist. LEXIS 150459, at *5 (E.D. Mo. September 5, 2018)); *MEA Fin. Enters., LLC v. Fiserv Solutions, Inc.*, 13-05041-CV-SW-BP, 2013 U.S. Dist. LEXIS 196041, at *7 (W.D. Mo. October 16, 2013) (holding that the economic

2

loss doctrine would not apply to fraudulent misrepresentation claims or service contracts that do not fall under the UCC); *Steadfast Ins. Co. v. Arc Steel, LLC*, 16-3214-CV-S-SRB, 2019 U.S. Dist. Lexis 80529, at *9-10 (W.D. Mo. May 13, 2019) (holding that the economic loss doctrine does not apply to a services contract and was not applicable to plaintiff's allegations based on the manner in which defendant performed the terms of the contract); *Anderson v. Ford Motor Co.*, 17-3244-CV-S-BP, 2017 U.S. Dist. LEXIS 213132, at *10-12 (W.D. Mo. December 29, 2017) (stating that "[a] review of the cases confirms that in Missouri the economic loss doctrine precludes tort claims arising from the sale of defective products where there has been no personal injury or damage.").

In this case, there is no dispute that the parties' Manufacturing Agreement ("the Agreement") is a service contract and that, consequently, the economic loss doctrine is inapplicable to prohibit Cafe Agave's claims because it was not a commercial buyer of goods. Crown Valley acknowledges as much in Section F of its motion in arguing that Count VI of Cafe Agave's Complaint for Breach of Implied Warranty of Good Faith should be dismissed because Section 400.1-304 of the UCC does not apply to contracts that are predominantly service contracts. Doc. 14. pp. 12-16. Specifically, Crown Valley asserts "that the relationship between the parties involved predominately services, not goods" and that "in this case, we are very clearly dealing with a contract having a massively predominant purpose of rendering services…" *See* Doc. 14 p. 13. Crown Valley further states that "Missouri law holds that in such situations, the contract will be construed as a service contract falling outside the UCC, not a goods contract."

Even beyond Crown Valley's acknowledgments, the Agreement is clearly a service contract that is not subject to the economic loss doctrine. The Agreement was a contract for canning Cafe Agave's beverage and the labor required. Crown Valley received Cafe Agave's completed beverages and contaminated them while in the process of providing this service. Cafe

3

Agave here is not complaining about a defect in its beverage products or the cans, there was no defect in same as produced by Galloway, but it has taken issue with Crown Valley's failure to perform its canning services. Under similar circumstances, the Court in *Steadfast* held that, in the context of a contract primarily for services (specifically the installation of steel and the labor required), the plaintiff's negligence and negligent misrepresentation claims were not barred by the economic loss doctrine. *Steadfast Ins. Co.*, 2019 U.S. Dist. Lexis 80529, at *9-10. The Agreement between the parties here is the same type of service contract that is "not primarily for the sale or lease of goods." *Id*. at *9. Therefore, as the court held in *Steadfast*, the Agreement is a contract for services and the economic loss doctrine is not applicable.

Courts have also held that the economic loss doctrine does not apply in cases involving the provision of professional services. *Bruce Martin Construction, Inc. v. CTB, Inc.*, 2012 WL 718624, at *3 (E.D. Mo. Mar. 6, 2012). Here, Crown Valley purported to have specialized knowledge and experience in producing and canning alcoholic-cream-based beverages, including having specific quality assurance and testing protocols in place. Doc. 1 at ¶ 18. As such, it provided professional services and the economic loss doctrine does not apply. Accordingly, the Court should deny Crown Valley's Partial Motion to Dismiss Counts I, II, and III based upon the economic loss doctrine.

**B.     Even if the Court finds that the economic loss doctrine potentially applies to service contracts, Cafe Agave's Fraud Claims are actionable because they are independent of the Agreement**

In its motion, Crown Valley claims that Cafe Agave's fraud claims are barred by the economic loss doctrine because the subject matter of the alleged misrepresentation was incorporated into the Agreement and Cafe Agave did not suffer damages outside of the contract because of Defendant's fraud. Doc. 14. pp. 3-8. As discussed above, the economic loss doctrine is not even potentially applicable to the parties' service contract but, even if the Court determines

4

that it is, the economic loss doctrine still does not prohibit Cafe Agave's claims because Crown Valley's fraudulent conduct was outside of the contract.

"A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement. That distinction has been drawn by courts applying traditional contract and tort remedy principles." *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998); *Self v. Equilon Enters., LLC*, 4:00CV1903, 2005 U.S. Dist. LEXIS 17288, at *40 (E.D. Mo. March 30, 2005) (holding that a fraud claim independent of the contract is not precluded by the economic loss doctrine). In determining whether a fraud claim is independent of a contract claim the court assesses two key factors: "1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract, and 2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud." *Spring Lake Pork v. Great Plains Mgmt.*, 2:19 CV 18 CDP, 2020 U.S. Dist. LEXIS 114438, at *8 (E.D. Mo. June 30, 2020).

"Courts generally agree that fraud in the inducement, necessarily prior to the contract, is independent of the contract, and therefore not barred by the economic loss doctrine." *Trademark Medical, LLC v. Birchwood Laboratories*, 22 F.Supp.3d 998, 1003 (E.D. Mo. 2014); *Anderson*, 2017 U.S. Dist. LEXIS 213132, at *10-12 (holding that plaintiff's fraudulent concealment claim was not barred by the economic loss doctrine finding that the claim was based on conduct preceding the formation of the contract). In addition, the failure to allege special damages outside of the contract is not dispositive at the pleading stage. *Spring Lake Pork,* 2020 U.S. Dist. LEXIS 114438, at *3. As Cafe Agave's Complaint sets forth facts sufficient to demonstrate both factors, the motion to dismiss should be denied as to Cafe Agave's fraud claims.

> i. *Cafe Agave has alleged sufficient facts that Crown Valley's misrepresentations and concealment were not incorporated in the Agreement.*

Cafe Agave's fraudulent inducement and fraudulent concealment claims allege misrepresentations that were not incorporated into the parties' contract. As to fraudulent inducement, on August 28, 2018, Cafe Agave and Crown Valley entered into the Agreement. *See* Doc. 1 ¶ 20 and Doc. 1-A. Prior to entering into the Agreement, and as part of Cafe Agave's efforts to qualify Crown Valley as an appropriate co-packer for its Spiked Cold Brew beverages, Crown Valley presented Cafe Agave with its standard Quality Assurance Program ("QAP") that it alleged it adhered to in the production of beverages and that would presumably be conducted for Cafe Agave's benefit. *Id*. at ¶ 19. One aspect of the purported QAP was "Scorpion" testing which provided for daily testing of the beverages being manufactured by Crown Valley and which would detect contamination. *Id*. However, the QAP and its detailed components, including the daily Scorpion testing, were not identified and were therefore not incorporated as terms of or, as Defendant argues, into the "four corners" of the Agreement. This is made clear by the integration clause in the Agreement which states that "[t]his Agreement and the attached schedule(s) constitute the entire agreement of the parties. Any previous understandings or agreements are superseded by this agreement." Agreement at ¶ 28. As such, any pre-formation agreements, or understandings regarding the QAP and the Scorpion testing were superseded by and not included in the Agreement.

Unbeknownst to Cafe Agave, Crown Valley did not have the represented QAP and its daily Scorpion testing in place at the time the Agreement was entered into. *Id*. at ¶ 20. Therefore, and during the pre-contract qualification process, Crown Valley intentionally misrepresented its QAP, including the daily Scorpion testing, and its ability to perform the Agreement and to can alcoholic-cream based beverages without contamination to induce Cafe Agave to enter into the Agreement.

*Id*. at ¶ 67. *See Spring Lake Pork, LLC*, 2020 U.S. Dist. LEXIS 114438, at *8-9 (holding that "where an alleged misrepresentation pertains to a party's ability to perform under a contract, the misrepresentation may be actionable in fraud"); *see also Future Proof Brands, LLC v. BevSource, Inc. et al.*, 21-cv-0741, 2021 U.S. Dist. LEXIS 232888, at *14 (D. Minn. December 6, 2021) (applying Missouri law in denying Crown Valley's motion to dismiss holding that the economic loss doctrine did not apply to the plaintiff's negligent misrepresentation claim). Accordingly, and because the QAP and daily Scorpion testing were not incorporated into the Agreement, Crown Valley's pre-contract misrepresentations relating to same were not subject matter incorporated into the Agreement and are sufficient to allege fraud outside of the Agreement.

In addition to the QAP and its Scorpion testing not being a part of the Agreement, Cafe Agave's claims of fraudulent concealment also allege conduct by Crown Valley outside of its breach of contract. In its motion, Defendant argues that "[w]hen a representation or omission concerns the quality, character, or safety of goods, the economic loss doctrine bars a fraud claim that is substantially redundant with a warranty claim…" Doc. 14 at 8. However, the Complaint's allegations of fraudulent concealment that occurred following the formation of the contract do not allege that Crown Valley misrepresented the quality, safety, or character of any product that Cafe Agave purchased from Crown Valley as a buyer of commercial goods.

Instead, the Complaint alleges that Crown Valley concealed that it had contaminated Cafe Agave's non-defective beverages after receiving them for canning. Doc. 1 at ¶ 45. Specifically, the Complaint alleges that Crown Valley concealed knowledge that it possessed on or about September 11, 2018 at the latest, regarding the contamination it caused of Cafe Agave's beverages. *Id*. Despite being aware of the contamination it caused, Crown Valley knowingly and intentionally concealed this information from Cafe Agave and continued to can Cafe Agave's beverages. *Id*. at

¶ 46. Accordingly, Cafe Agave has pled specific facts and allegations which demonstrate that Defendant's fraudulent conduct was outside of and independent of the parties' Agreement and the economic loss doctrine does not apply.

> ii. *Cafe Agave's Complaint alleges sufficient facts that it incurred damages outside of the Parties' Agreement.*

As discussed, Cafe Agave's Complaint alleges that Defendant's misrepresentation fraudulently induced it into entering the Agreement and that "Cafe Agave would not have entered into the Agreement without Crown Valley's representations…" *Id*. at ¶ 66. Based on Crown Valley's fraudulent inducement, Cafe Agave was damaged. *Id*. at ¶ 69. As such, any damages caused by Crown Valley's conduct, including the loss of a 15-year licensing agreement with Pabst, and ultimately the buyout by Pabst of the Cafe Agave brand, were entirely outside the contract and the economic loss doctrine does not apply. *See* Doc. 1 at ¶ 42.[1] In any event, and as recognized in *Spring Lake Pork v. Great Plains Mgmt.,* the pleading of special damages is not dispositive at this stage of the proceedings. 2020 U.S. Dist. LEXIS 114438, at 8.

**C.     Fraudulent Concealment falls under the rubric of fraudulent misrepresentation**

Cafe Agave properly pled that Crown Valley concealed its knowledge of the contamination it caused of Cafe Agave's beverage. "Under Missouri law a common law claim for fraudulent non-disclosure or concealment falls under the rubric of fraudulent misrepresentation." *Tucker v. Ethicon, Inc.*, 4:20-CV-1543 RLW, 2021 U.S. Dist. 22315, at *20-21 (E.D. Mo. February 5, 2021)

---

[1] L&F Brands' Complaint did not allege that Crown Valley falsely represented its QAP which induced L&F to enter into a manufacturing agreement. *See L&F Brands v. Crown Valley Winery*, 1:19-CV-134-SNLJ, Doc. 39-1, (E.D. Mo. June 24, 2020). In addition, L&F Brands did not allege any damages beyond the damages to its product and incurred as a result of the breach of contract. Cafe Agave has alleged facts and misrepresentations made by Crown Valley separate and apart from the Agreement that induced Cafe Agave to enter into the Agreement. Cafe Agave has also alleged damages, the loss of contract with Pabst, as damages beyond those incurred from the breach of contract. Finally, while L&F Brands involved actual manufacturing of the product, Crown Valley's activities were limited to canning for Café Agave. Accordingly, this case is distinguishable from the facts of the L&F Brands case, where this Court found that there was no independent fraud claim.

8

(denying defendant's motion for summary judgment on plaintiff's fraudulent concealment claim holding that the fraudulent concealment claims are "subsumed by the fraudulent misrepresentation cause of action under the Missouri Supreme Court's decision in Hess"). "Fraudulent concealment is 'based on the misrepresentation of a material fact by silence." *Id*. at 21. *quoting Anderson v. Ford Motor Co.*, 17-3244-CV-S-BP, 2017 U.S. Dist. LEXIS 213132, at *6-7 (W.D. Mo. December 29, 2017) (denying defendant's motion to dismiss plaintiff's claim of fraudulent concealment). "In a case of fraudulent concealment, 'a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation.'" *Id*. (*quoting Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007). As in the cases of *Tucker* and *Anderson*, Cafe Agave's fraudulent concealment claim falls under the rubric of fraudulent misrepresentation and is a valid cause of action under Missouri law. Therefore, Crown Valley's Partial Motion to Dismiss as to Count I of Cafe Agave's Complaint should be denied.

**D.** **Counts I and III were pled with sufficient facts to place Crown Valley on notice such that the pleading requirements have been satisfied**

Cafe Agave has sufficiently pled facts to proceed on the counts asserting Fraudulent Concealment and Fraudulent Inducement. "The Complaint must allege facts sufficient to 'state a claim for relief that is plausible on its fact.'" *Anderson*, 2017 U.S. Dist. LEXIS 213132, at *6 (quoting *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011)). "To sufficiently plead a plausible claim, the factual content of the claim must allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Horras v. American Capital Strategies*, 729 F.3d 798, 801 (8th Cir. 2013)).

To prove a claim for fraud Cafe Agave must show: (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's

9

ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury. *Id*. (denying defendant's motion to dismiss finding plaintiff's complaint asserted sufficient facts to proceed on a claim of fraudulent concealment); *See also Scott Salvage Yard, LLC v. Gifford*, 382 S.W.3d 134, at 137 (Mo. App. Ct. 2012) (applying the elements to fraudulent inducement in denying defendant's motion to dismiss); *See also Citizens Bank of Appleton City v. Schapeler*, 869 S.W.2d 120, 126 (Mo. App. Ct. 1993) (applying the same elements to fraudulent inducement).

"To determine whether the circumstances constituting fraud are stated with sufficient particularity to meet the pleading requirements of Rule 9(b), [the Court] examines the pleading for details such as "the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud and what was given up or obtained by the alleged fraud." *Vitello v. Natrol, LLC*, 4:18 CV 915 RWS, 2018 U.S. Dist. LEXIS 203976, at *3-4 (denying defendant's motion to dismiss, holding plaintiff pled sufficient facts). "However, a plaintiff does not necessarily need to show all these factors under Rule 9(b) to plead fraud with sufficient particularity. *Id* at *4. "That is although the pleading alleging fraud need not provide anything more than notice of the claim, it must contain a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id.*

The Complaint satisfies these standards. Cafe Agave has properly and adequately pled sufficient facts that Crown Valley misrepresented that it had a QAP in place prior to the parties' entering the Agreement and concealed its knowledge of the contamination it caused of Cafe Agave's beverages. *See* Doc. 1 at ¶¶ 19, 26-29 and 40-41. Specifically, Cafe Agave identified communications with Crown Valley's agents, Bryan Siddle and Jeremy Gilbert, during May, July,

and August 2018 in which Crown Valley fraudulently asserted it had a standard QAP in place providing for mandatory testing. *Id.* at ¶ 64. Cafe Agave further alleges that Crown Valley had knowledge that the beverages were contaminated and "knew that the microbiological integrity of the products could have a direct impact on their commercial viability." *Id.* at ¶ 44.

Crown Valley made these misrepresentations to fraudulently induce Cafe Agave to enter into the Agreement and concealed that it had contaminated the beverages to continue canning Cafe Agave's products. *Id.* at ¶¶ 20, 48, 65. Cafe Agave relied on Crown Valley's misrepresentations and concealments in deciding to enter into the Agreement and to continue to allow Crown Valley to can its beverages. In doing so, Cafe Agave has pled the "who" (agents of Crown Valley including Bryan Siddle and Jeremy Gilbert), the "when" (May, June, August, September, and October 2018), the "what" (Crown Valley's QAP and concealment of its knowledge of contamination) and "how" the statements were misleading (Crown Valley had not enacted the QAP and continued canning Cafe Agave's beverages despite its knowledge of the contamination). Therefore, Cafe Agave has sufficiently met the notice requirements of Rule 9(b) and Crown Valley's Partial Motion to Dismiss Counts I and III should be denied.

**E.     Recklessness is a Valid Cause of Action in the Commercial Context**

Crown Valley argues that Count II of the Complaint should be dismissed because a cause of action for recklessness is not a recognized cause of action in the commercial context. Doc. 14. pp. 9-10. Crown Valley acknowledges that recklessness has been recognized by Missouri courts as an independent tort. *Id.* at 9 (citing *Nichols v. Bresnahan*, 357 Mo. 1126, 1130 (Mo. 1948) ("Reckless injury is another kind of tort, an intentional injury often based upon an act done in utter disregard of the consequences.")). However, Crown Valley essentially argues that the cause of action for recklessness can only be applied in a personal injury matter.

11

Nevertheless, Missouri courts have made clear in defining recklessness that it is tortious conduct on a spectrum of negligence to intentional conduct, and there is no limitation with respect to the kind of harm that the defendant's reckless misconduct causes. *Farm Bureau Town & Country Ins. Co. v. Turnbo*, 740 S.W.2d 232, 234 (Mo. Ct. App. 1987). Indeed, the Court in *Turnbo* makes clear that recklessness is similar to negligence but involves an aspect of intentionality. *Turnbo* does not restrict recklessness to only tortious conduct related to injuries to people. Rather, it shows that the recklessness cause of action is simply based upon a state of mind that is closer to intentional conduct than negligence. *See also Hatch v. V.P. Fair Found., Inc.*, 990 S.W.2d 126, 139 (Mo. Ct. App. 1999).[2]

Importantly, Crown Valley does not cite a single Missouri case that holds that the recklessness cause of action is limited to personal injury matters. And since recklessness is just a state of mind, it hardly makes sense to limit this cause of action to a bodily injury lawsuit, and not to a lawsuit involving the reckless rendition of services. Accordingly, this Court should not hold that recklessness does not apply in the commercial context. As negligence has been applied in the commercial context, other tortious conduct on the spectrum from negligence to intentional conduct should also be applied to the commercial context, including this case. Therefore, recklessness is a valid cause of action for Plaintiff to bring, and Crown Valley's Partial Motion to Dismiss Count II should be denied.

**F.      Breach of Implied Warranty of Good Faith is a submissible cause of action.**

---

[2] The *Hatch* Court further explained recklessness by noting, "Missouri recognizes a cause of action for recklessness which our supreme court has explained and defined as follows: Negligence is one kind of tort, an unintentional injury usually predicated upon failure to observe a prescribed standard of care while a willful, wanton, reckless injury is another kind of tort, an intentional injury often based upon an act done in utter disregard of the consequences. Reckless conduct may be negligent in that it is unreasonable but it is and must be something more than unreasonable, 'it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligent.'" This is precisely what Cafe Agave contends was the state of mind of Crown Valley as set forth in the Complaint.

Count VI of the Complaint alleges a Breach of the Implied Warranty of Good Faith and Fair Dealing. Doc. 1, Count VI. Defendant contends that Count VI should be dismissed because the breach of the implied warranty of good faith is not a separate cause of action under the UCC. Doc. 14, pp. 11-12. Defendant relies solely on Comment 1 to UCC § 1-304 to support this proposition. *Id.* However, the cause of action alleged in Count VI is derived from the common law and not the UCC, and therefore, this argument is inapplicable to Plaintiff's Complaint.

Notably, the Eastern Division of this Court recently declined to dismiss a cause of action for breach of the implied warranty of good faith and fair dealing based on this same argument, noting that "[w]hile the comment provides that no cause of action for breach of the duty of good faith and fair dealing may arise under the statute itself, this does necessarily preclude the entire existence of such a cause of action." *W. Silver Recycling v. Nidec Molor Corp.*, 509 F. Supp. 3d 1106, 1115 (E.D. Mo. 2020). The court went on to explain that such a claim is a "species of a breach of contract claim." and emphasized that "comments to the U.C.C. do not carry the force of law." *Id.* (citing *Bracey v. Monsanto Co.*, 823 S.W.2d 946, 950 n.6 (Mo. banc 1992)). Accordingly, Defendant's argument which relies solely on a UCC comment fails as a matter of law.

Defendant further argues that because the contract at issue is a services contract and, therefore, is not governed by the UCC, it cannot survive dismissal. Doc. 14, pp. 12-16. This argument likewise misses the point that Plaintiff is bringing Count VI under Missouri common law, and not the UCC is similarly inapplicable. Accordingly, Defendant's Partial Motion to Dismiss as to Count VI of the Complaint should be denied.

**G.     Implied warranty of good faith claims can coexist with express contract claims under Missouri law.**

"A claim of breach of a duty of good faith and fair dealing is not fundamentally inconsistent with or duplicative of a breach of contract claim." *W. Silver Recycling*, 509 F. Supp. 3d at 1114

13

(E.D. Mo. 2020) (quoting *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1125 (8th Cir. 2006) (quoting *Trimble v. Pracna*, 167 S.W.3d 706, 711 (Mo. banc 2005)).

While Defendant is correct that plaintiffs cannot bring implied warranty claims that are duplicative of express contractual claims, Defendant is incorrect in its assertion that Cafe Agave's Count VI is merely a pleading in the alternative. Doc 14. p. 16. Count VI of the Complaint is an independent cause of action based upon a set of facts set forth in the Complaint, which seeks to hold Defendant responsible for its omissions that were not made a part of the Agreement. It would, therefore, be premature to dismiss Count VI as duplicative at this point. As Cafe Agave has properly pled a distinct cause of action for breach of the implied warranty of good faith and fair dealing, Defendant's Partial Motion to Dismiss should be denied.

## H. The implied warranty of good faith and fair dealing is a separate cause of action under Missouri law.

Defendant's general argument in Section H of its motion is based on the flawed premise that there is no situation in which a claim for breach of the implied covenant of good faith and fair dealing can be listed as a separate cause of action under Missouri law. *See* Doc 14 at p. 18.[3]

Defendant's argument relies primarily on *Comprehensive Care Corp. v. RehabCare Corp*. *See* Doc 14 pp. 17-18. In *Comprehensive Care*, a seller sold shares of buyer's corporation to buyer with a condition of repayment upon resale. 98 F.3d 1063, 1064 (8th Cir. 1996). The buyer rejected bids from other potential buyers and was never acquired so seller was not paid. *Id.* Judgment was

---

[3] The Missouri Eastern District has repeatedly upheld causes of action for implied obligations is an independent cause of action. *See e.g. W. Silver Recycling v. Nidec Molor Corp.*, 509 F. Supp. 3d 1106, 1115 (E.D. Mo. 2020) (holding that breach of implied warranties claim is a species of contract claim that a buyer could bring against a manufacturer alongside a breach of contract claim); *Citimortgage, Inc. v. Platinum Home Mortg. Corp.,* No. 4:15CV1242 JCH, 2016 U.S. Dist. LEXIS 3979, 2016 WL 147110, at *4 (E.D. Mo. Jan. 13, 2016) (finding defendant adequately stated counterclaim for breach of implied covenants by alleging that plaintiffs acted on nonexistent defects and failed to afford contractually-mandated period and opportunity to cure); *see also, HHCS Pharm., Inc. v. Express Scripts, Inc.*, No. 4:16-CV-1169 (CEJ), 2016 U.S. Dist. LEXIS 174099, at *4 (E.D. Mo. Dec. 16, 2016).

14

initially entered for the seller in a securities fraud and breach of contract case. *Id.* Buyer appealed and the court held in part that the claims failed because the language of the contract did not obligate the buyer to pursue an acquisition. *Id.* at 1065. The court held that the implied covenant of good faith and fair dealing did not create a new fiduciary duty not outlined in the underlying agreement reasoning that "the law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties." *Id.* at 1066 (internal citations omitted).

This holding should be interpreted to mean that a plaintiff cannot use the implied covenant to read into a contract entirely new and separate duties and obligations – but it does not mean that there are no implied duties and obligations within contracts. *See W. Silver Recycling,* 509 F. Supp. at 1114 (citing this very language in its analysis upholding an independent cause of action for breach of the implied covenant). Here, Cafe Agave is alleging that Defendant violated a duty by concealing that it had contaminated Cafe Agave's beverages. While the duty to disclose was not expressly stated or incorporated into the parties' Agreement, Cafe Agave is not alleging that Defendant had some entirely separate duty unrelated to the Agreement, as was the case in *Comprehensive Care*. Accordingly, Defendant's Partial Motion to Dismiss should be denied as to this point as well.

## CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss should be denied as a matter of law. In the alternative, if the Court is inclined to grant any portion of Defendant's motion, Cafe Agave requests leave to amend.

Dated: June 16, 2023

                Respectfully Submitted,

                *By: /s/ Daniel E. Tranen*
                Daniel E. Tranen, #48585 MO
                Jennifer Boston, #72719 MO
                **WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
                7777 Bonhomme Ave., Suite 1900
                St. Louis, MO 63105
                (314) 930-2860
                (314) 930-2861
                Daniel.Tranen@wilsonelser.com
                Jennifer.Boston@wilsonelser.com

                ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on this 16 June 2023, I served a true and accurate copy of the foregoing document upon counsel of record via the Court's electronic filing.

*/s/ Daniel E. Tranen*