UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CAFÉ AGAVE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-32-SNLJ |
| ) | |
| CROWN VALLEY WINERY, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Café Agave, Inc., brought this lawsuit against defendant Crown Valley Winery, Inc., alleging that Crown Valley breached a "co-packing agreement" which called for Crown Valley to package certain pre-blended beverages for plaintiff. Defendant moves to dismiss four of the Complaint's six counts. [Doc. 14.] The motion has been fully briefed and is ready for disposition.

**I.      Factual Background**

For the purposes of this motion to dismiss, the facts alleged in the complaint are presumed true. The parties' "Manufacturing Agreement" stated that defendant Crown Valley would package certain pre-blended beverages for plaintiff that were delivered, in bulk and unpackaged, to Crown Valley. Plaintiff alleges Crown Valley allowed plaintiff's pre-blended beverage product to become contaminated while stored in Crown Valley's tanks awaiting packaging, and that, as a result, plaintiff had to destroy product that was canned and packaged at Crown Valley. Plaintiff claims, among other things, that these alleged events caused damage to plaintiff's business relationship with nonparty Pabst

Brewing Company related to a potential licensing/distribution agreement between plaintiff and Pabst.

Plaintiff brings six counts against defendant: Fraudulent Concealment (Count I), Recklessness (Count II), Fraudulent Inducement (Count III), Breach of Contract (Count IV), Breach of Express Warranty (Count V), and Breach of Implied Warranty of Good Faith (Count VI). Defendant moves to dismiss Counts I, II, III, and VI.

## II.   Motion to Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). In addressing a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *United States ex rel. Ambrosecchia v. Paddock Laboratories, LLC.*, 855 F.3d 949, 954 (8th Cir. 2017). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 555. A complaint must set forth factual allegations which are enough to "raise a right to relief

2

above the speculative level." *Id.* at 555. However, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

**III   Discussion**

Defendant's arguments will be discussed in turn below.

**A.   Economic loss doctrine and Counts I-III.**

Defendant argues that plaintiff's first three counts—fraudulent concealment, recklessness, and fraudulent inducement—should be dismissed pursuant to the economic loss doctrine. The economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. *Trademark Medical, LLC v. Birchwood Laboratories, Inc.*, 22 F. Supp 3d 998, 1002 (E.D. Mo. 2014); *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. Ct. App. E.D. 2014).

Indeed, the parties here had a contract that governed their relationship. Defendant was to re-package "Spiked Cold Brew" beverages that plaintiff provided and transferred into defendant's tanks. Plaintiff alleges that defendant breached the contract because all 14,294 cases of Spiked Cold Brew that defendant canned had to be destroyed due to contamination with an alcohol-resistant *pediococcus acidilactici* bacterium. Plaintiff alleged that it suffered economic damages as a result of defendant's breach of that contract. In particular, plaintiff lost a 15-year licensing agreement with nonparty Pabst Brewing Company when it could not supply Pabst with the Spiked Cold Brew beverages.

3

Plaintiff also alleges that these circumstances ultimately lead to the buyout of the Café Agave brand by Pabst. Plaintiff alleges that defendant failed to properly sterilize its lines/tanks, failed to conduct "Scorpion testing" of the finished canned beverages, and otherwise failed to adhere to its standard Quality Assurance Program ("QAP").

Plaintiff brings a breach of contract claim against defendant, but it also brings tort claims for fraudulent concealment, recklessness, and fraudulent inducement. Plaintiff contends that the economic loss doctrine does not bar its tort claims, first, because plaintiff says the doctrine does not apply to service contracts. This Court has addressed the complex and somewhat contradictory legal landscape surrounding the economic loss doctrine. *See Bruce Martin Const., Inc. v. CTB, Inc.*, No. 1:10CV205 SNLJ, 2012 WL 718624, at *3 (E.D. Mo. Mar. 6, 2012), *aff'd,* 735 F.3d 750 (8th Cir. 2013). "Some Missouri courts have recognized specific exceptions where the doctrine does not apply in cases involving a fiduciary relationship or negligent rendition of professional services, public duty, and some real property rights." *Id.* But there appears to be no blanket exception for service contracts as plaintiff suggests. *See OS33 v. CenturyLink Comms., L.L.C.*, 350 F. Supp. 3d 807, 815-17 (E.D. Mo. 2018); *see also Compass Bank v. Eager Rd. Assocs.*, LLC, 922 F. Supp. 2d 818, 827–28 (E.D. Mo. 2013); *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. App. E.D. 2014). Indeed, the doctrine was first applied by the Supreme Court in a case involving general contracting services. *See Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. 1978).

4

"The economic loss doctrine bars 'recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty.' " *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010).  It is clear, then, that plaintiff's Count II for "Recklessness" sounds in tort and is barred by the economic loss doctrine.  But, as the Eighth Circuit has explained, "A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement.  That distinction has been drawn by courts applying traditional contract and tort remedy principles." *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998) (cited cases omitted) (applying Minnesota law).  Plaintiff thus argues that its claims for fraudulent concealment and fraudulent inducement survive because they are based on matters outside the contract.

This Court has identified two "critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine." *Compass*, 922 F. Supp. 2d at 827.  The first is "whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract." *Id.*  In *AKA Distrib.*, 137 F.3d at 1087, for example, the alleged misrepresentations concerned "a term of the contract" and were therefore not actionable.  922 F. Supp. 2d at 827.  The second factor is whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud.  *Id.*  In *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996), for example, the court held that to be actionable, a fraud claim

5

must "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."

Plaintiff's allegations of pre-contract fraud include that defendant misrepresented its QAP and the fact that "Scorpion testing" would be performed on the Spiked Cold Brew beverages during the canning process. Plaintiff alleges that in fact defendant never intended to employ Scorpion testing and that, had plaintiff known the truth, it would not have entered into the contract. Plaintiff alleges such representations were not included as terms in the parties' Agreement. Thus, plaintiff contends it was fraudulently induced to enter into the contract.

Plaintiff supports its argument by citing to the Agreement's integration clause, which states that "this Agreement and the attached schedule(s) constitute the entire agreement of the parties. Any previous understandings or agreements are superseded by this agreement."). Plaintiff cites "Agreement at 28" for this language. [Doc. 19 at 6.] Frustratingly, the plaintiff fails to attach the Agreement as an exhibit to either its Complaint or to its briefing, but this Court may consider the Agreement as a document "necessarily embraced by the complaint" and thus it is not a matter "outside the pleadings" as defendant complains. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); [Doc. 23 at 4]. Regardless, plaintiff's complaint alleges the Agreement required plaintiff "to utilize good manufacturing practices and use the same degree of care in making and storing the beverages that Crown Valley uses in making and storing its own products and in all events in accordance with acceptable industry

6

practices and Café Agave's specifications." [Doc. 1 ¶ 21.] "Where a contract term contains or conflicts with an alleged misrepresentation, the contract term controls, and there is no fraudulent misrepresentation claim." *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 904 (D. Minn. 2014) (applying Missouri law and citing *AKA Distrib. Co.,* 137 F.3d at 1087). In this case, the Agreement's terms regarding quality control "in accordance with acceptable industry practices and Café Agave's specifications" certainly constitutes "subject matter of the alleged representation" as required by *Compass*, 922 F. Supp. 2d at 827. In other words, the parties agreed on contract terms involving quality assurance, and thus the subject matter of the alleged misrepresentations was part of the contract. There can be no fraudulent inducement claim under those facts.

Additionally, as to the second independent factor, plaintiff does not allege it suffered any damages beyond those allegedly suffered as a result of defendant's alleged breach of the Agreement. The Complaint alleges:

> Crown Valley's <u>negligence, recklessness, fraud, willful misconduct, breach of contract and breach of warranty caused [Plaintiff] damages</u>, including the cost of lost goods, lost profits, costs of product cancellation and destruction, attorney's and professional fees and losses related to business interruption, including loss of a 15-year licensing agreement with Pabst, and, ultimately, the buyout by Pabst of the Cafe Agave brand.

[Doc. 1 ¶ 42 (emphasis added).] Plaintiff does not dispute that it seeks the same damages for each of its claims, nor does plaintiff argue that the Complaint identifies any damage type attributable solely to a fraud claim. Although plaintiff argues "any damages caused by Crown Valley's conduct…were entirely outside the contract and the economic loss doctrine does not apply" [Doc. 19 at 8], this statement contradicts ¶ 42 of the Complaint,

7

*supra*.  Plaintiff does not identify its separate fraud-related damages or explain how those damages would not be recoverable as contract damages.

Plaintiff instead argues that the failure to identify special damages alone is not dispositive, citing *Spring Lake Pork, LLC v. Great Plains Management, L.L.C.*, No. 2:19cv18 CDP, 2020 WL 3542292, at *3 (E.D. Mo. June 30, 2020).  That case allowed a fraudulent inducement claim to proceed where the defendant's alleged misrepresentation pertained to the defendant's skill, experience, and abilities in managing large-scale swine breeding operations.  This Court noted,

> Where an alleged misrepresentation is explicitly incorporated into the contract or pertains to a party's <u>intent</u> to perform under a contract, the misrepresentation is more properly construed as a breach of contract claim; however, where an alleged misrepresentation pertains to a party's <u>ability</u> to perform under a contract, the misrepresentation may be actionable in fraud.

*Id.* (emphasis in original).  Plaintiff alleges here that defendant misrepresented that it would conduct certain quality control testing and that defendant did not actually have the "represented standard QAP in place that it would adhere to for the production of beverages." [Doc. 1 at ¶ 64.]  This goes more to defendant's intent to perform in that it relates directly to the Agreement's terms regarding quality control—that plaintiff intended to fulfill the requirements of standard QAP quality control testing, even if it was not yet in place.

These facts are less like those in *Spring Lake Pork* and more akin to those in *Compass*, in which the alleged misrepresentations were

> (1) they "collectively had $4.15 million [i.e., the amount of the Developer Settlement Payment] available in cash that would be paid to Plaintiffs in

8

>   advance of the Bond Refinancing" and (2) they "could obtain a letter of credit
>   in the amount of $1.35 million [i.e., the amount of the Developer Line of
>   Credit] from a BBB rated financial institution."

922 F. Supp. 2d at 826–27.  The *Compass* court noted that those representations were about intent to perform and became part of the contract, so they could not form the basis of a fraudulent inducement claim.  *Id.*  In addition, the *Compass* plaintiff did not adequately assert additional damages outside those recoverable in connection with its breach of contract claim.  *Id.* at 828.  Here, statements about QAP procedures became part of the contract and could not form the basis of a fraud claim, and further, plaintiff does not identify damages not recoverable under the contract.

Plaintiff also alleges post-contract concealment occurred when defendant failed to convey its findings that the canned Spiked Cold Brew beverages were contaminated.  This, too, is simply yet another way plaintiff contends that defendant breached their Agreement.  As a result, the economic loss doctrine bars plaintiff's fraud-related claims.

Because this Court holds that the economic loss doctrine precludes plaintiff's fraud and recklessness counts, this Court need not address defendant's other arguments to dismiss those claims.

### B.  Breach of Warranty of Good Faith (Count VI)

The Complaint states that "Section 400.1-304 of the Missouri Uniform Commercial Code imposes a legal duty or obligation on a contractual party to exercise good faith the carry out the obligations and terms of a contractual agreement."  [Doc. 1 ¶ 92.]  Plaintiff claims that defendant breached its duty of good faith to plaintiff by

9

concealing the presence of known contamination and continuing to can plaintiff's products after learning the products were contaminated.  [Doc. 1 ¶ 94.]  Defendant argues that this claim should be dismissed for several reasons.

First, defendant contends that the count must be dismissed because the UCC governs only limited types of commercial subject matters and transactions, and, in particular, the UCC's "implied warranties do not apply to service contracts." *Missouri Farmers Ass'n v. McBee*, 787 S.W.2d 756, 761 (Mo. Ct. App. 1990).  Plaintiff responds that it brings this count not under the UCC, but under Missouri common law.  Plaintiff does not explain why it cites the UCC in its count rather than invoking Missouri common law.

Regardless, the "implied duty of good faith is not a separate claim beyond or divorced from the contract. The covenant cannot give rise to new obligations not otherwise contained in the contract's express terms." *Meridian Creative All., LLC v. O'Reilly Auto. Stores, Inc.*, 519 S.W.3d 839, 845 (Mo. Ct. App. 2017) (internal citations omitted).  "The law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms. The implied covenant simply prohibits one party from depriving the other party of its expected benefits under the contract." *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) (internal citations omitted).  In other words, the "good faith obligation requires that contracting parties not prevent or hinder performance by the

10

other party." *Schell v. LifeMark Hosps. of Missouri*, 92 S.W.3d 222, 230 (Mo. Ct. App. 2002) (discussing at length what the covenant is and is not).

Plaintiff concedes that it cannot bring implied warranty claims duplicative of express contractual claims. [Doc. 19 at 14.]  But plaintiff insists that the claim seeks "to hold Defendant responsible for its omissions that were not made a part of the Agreement." [Doc. 19 at 14.]  Plaintiff's allegations state that defendant's breaches of the duty of good faith and fair dealing include concealing the presence of known contamination and continuing to can plaintiff's products despite that knowledge.  Plaintiff explains that the allegations are outside the contract and argues that it would be "premature" to dismiss these claims, but these allegations do not go to whether defendant "hinder[ed] performance" by plaintiff.  *See Schell*, 92 S.W.3d at 230.  The claims are inextricably tied to plaintiff's breach of contract claim, and they amount to just another way the contract was breached.  Count VI for breach of warranty of good faith will be dismissed.

### IV.    Conclusion

Defendant's motion to dismiss will be granted.  Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. 14] is GRANTED, and Counts I, II, III, and VI are DISMISSED.

Dated this 19th day of July, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE