**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| CAFÉ AGAVE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-32-SNLJ |
| | ) |
| CROWN VALLEY WINERY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Café Agave, Inc., initially brought this lawsuit against defendant Crown Valley Winery, Inc., alleging that Crown Valley breached a "co-packing agreement" which called for Crown Valley to package certain pre-blended beverages for plaintiff. The Court granted Crown Valley's partial motion to dismiss in July 2023, but plaintiff later filed an amended complaint adding Crown Valley employees Jeremy Gilbert and Bryan Siddle as defendants [Doc. 42].

The three defendants move to dismiss nine of the Amended Complaint's ten counts [Docs. 47, 53, 54]. The motions have been fully briefed and are ready for disposition.

I.      **Factual Background**

For the purposes of this motion to dismiss, the facts alleged in the complaint are presumed true. The parties' "Manufacturing Agreement" stated that defendant Crown Valley would package certain pre-blended beverages for plaintiff that were delivered, in bulk and unpackaged, to Crown Valley. Plaintiff alleges Crown Valley allowed plaintiff's

pre-blended beverage product to become contaminated while stored in Crown Valley's tanks awaiting packaging, and that, as a result, plaintiff had to destroy product that was canned and packaged at Crown Valley. Plaintiff claims, among other things, that these alleged events caused damage to plaintiff's business relationship with nonparty Pabst Brewing Company related to a potential licensing/distribution agreement between plaintiff and Pabst.

Plaintiff brings ten counts against defendants: Negligence (Count I), Negligence Per Se—State Regulations (Count II), Negligence Per Se—Federal Regulations (Count III), Fraudulent Misrepresentation/Inducement (Count IV), Fraudulent Omission/ Misrepresentation by Omission (Count V), Negligent Misrepresentation/Inducement— Prior to Entering Contract (Count VI), Negligent Concealment/Misrepresentation by Omission—Failure to Disclose after Entering the Contract (Count VII), Breach of Contract (Count VIII, against Crown Valley only), Negligent Supervision (Count IX), and Breach of Contract (Count X, against Crown Valley only).

Defendants move to dismiss all but Count VIII. Plaintiff does not oppose dismissal of Counts I, II, III, and IX. In its reply brief, defendant Crown Valley withdrew its motion to dismiss regarding Count X. Thus, the only remaining counts for discussion are Counts IV-VII.

## II.    Motion to Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal

premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). In addressing a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *United States ex rel. Ambrosecchia v. Paddock Laboratories, LLC.*, 855 F.3d 949, 954 (8th Cir. 2017).  A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 555. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." *Id.* at 555. However, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## III   Discussion

Defendants' arguments will be discussed in turn below.

### A.  The economic loss doctrine and Counts IV-VII.

Plaintiff's original complaint included three counts that sounded in tort.  This Court dismissed those counts because the economic loss doctrine applied to bar those

claims. [Doc. 27.]  As explained in that July 2023 memorandum and order, the economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. *Trademark Medical, LLC v. Birchwood Laboratories, Inc*., 22 F. Supp 3d 998, 1002 (E.D. Mo. 2014); *Captiva Lake Invs., LLC v. Ameristructure, Inc*., 436 S.W.3d 619, 628 (Mo. Ct. App. E.D. 2014).

It remains true that the parties here had a contract that governed their relationship. Defendant was to produce and package "Spiked Cold Brew" according to plaintiff's specifications. Plaintiff alleges that defendant breached the contract because all 14,294 cases of Spiked Cold Brew that defendant canned had to be destroyed due to contamination with an alcohol-resistant *pediococcus acidilactici* bacterium.  Plaintiff alleged that it suffered economic damages as a result of defendants' actions.  In particular, plaintiff lost a 15-year licensing agreement with nonparty Pabst Brewing Company when it could not supply Pabst with the Spiked Cold Brew beverages.  Plaintiff also alleges that these circumstances ultimately lead to the buyout of the Café Agave brand by Pabst.  Plaintiff alleges that defendant failed to properly sterilize its lines/tanks, failed to conduct "Scorpion testing" of the finished canned beverages, and otherwise failed to adhere to its standard Quality Assurance Program ("QAP").

Just as before, plaintiff contends that the economic loss doctrine does not bar its tort claims because such tort claims are allowed if they are based on misrepresentations outside the contract.  *See AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th

Cir. 1998); *Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.* ("*BDE*"), 69 F. Supp. 3d 928, 933-34 (E.D. Mo. 2014).

This Court has identified two "critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine." *Compass*, 922 F. Supp. 2d at 827. The first is "whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract." *Id.* In *AKA Distrib.*, 137 F.3d at 1087, for example, the alleged misrepresentations concerned "a term of the contract" and were therefore not actionable. 922 F. Supp. 2d at 827. The second factor is whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud. *Id.* In *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc*., 98 F.3d 13, 20 (2d Cir. 1996), for example, the court held that to be actionable, a fraud claim must "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."

As to the **first factor**, plaintiff argues that CV's alleged representations had no "precise nexus" to the Agreement and that they relate only to the capabilities of CV to perform the agreement. In support, plaintiff notes that false statements about a party's capabilities and experience are actionable if they induce a party to enter into a contract. *See Scott Salvage Yard, LLC v. Gifford*, 382 S.W.3d 134, 138 (Mo. Ct. App. 2012), *Superior Edge, Inc. v. Monsanto Co*., 44 F. Supp. 3d 890, 905 (D. Minn. 2014), and *Spring Lake Pork, LLC v. Great Plains Mgmt., L.L.C.*, 2020 WL 3542292, at *1 (E.D. Mo. June 30, 2020). Plaintiff offers three examples of alleged misrepresentations/

omissions bearing on CV's "capabilities" to perform under the Agreement: (1) an allegedly fraudulent presentation of a Quality Assurance Program ("QAP"), (2) a representation of adherence to the QAP, and (3) alleged awareness of contamination risks.

Although the presence of a QAP may relate to how CV would perform under the contract, none of those matters involves CV's capability to perform.  More importantly, they cannot form the basis of a tort claim outside the contract because their subject matter was incorporated into the Agreement. "Where a contract term contains or conflicts with an alleged misrepresentation, the contract term controls, and there is no fraudulent misrepresentation claim." *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 904 (D. Minn. 2014) (applying Missouri law and citing *AKA Distrib. Co.,* 137 F.3d at 1087); *Compass Bank v. Eager Rd. Assocs., LLC*, 922 F. Supp. 2d 818, 826–27 (E.D. Mo. 2013).

Plaintiff's allegations of pre-contract fraud include that defendant misrepresented its QAP and the fact that "Scorpion testing" would be performed on the Spiked Cold Brew beverages during the canning process.  Plaintiff alleges that in fact defendant never intended to employ Scorpion testing and that, had plaintiff known the truth, it would not have entered into the contract. Plaintiff alleges such representations were not included as terms in the parties' Agreement.  Thus, plaintiff contends it was fraudulently induced to enter into the contract.

Plaintiff's amended complaint alleges the Agreement required plaintiff "to utilize good manufacturing practices and use the same degree of care in making and storing the

beverages that Crown Valley uses in making and storing its own products and in all events in accordance with acceptable industry practices and Café Agave's specifications." [Doc. 42 ¶ 41.] The Agreement's terms regarding quality control "in accordance with acceptable industry practices and Café Agave's specifications" certainly constitutes "subject matter of the alleged representation." *See Compass*, 922 F. Supp. 2d at 827. Even "intentionally-false statements…indicating … intent to perform under the contract" do not support a claim of fraud. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996), *cited by id.* Here, the parties agreed upon contract terms involving quality assurance, and thus the subject matter of the alleged misrepresentations was part of the contract. There can be no fraudulent inducement claim under those facts.

As to the **second factor**, plaintiff does not allege it suffered any damages beyond those allegedly suffered as a result of defendant's alleged breach of the Agreement. The Complaint alleges:

> Crown Valley's <u>negligence, negligence per se, negligent supervision, fraud, willful misconduct, breach of contract and breach of warranty caused [plaintiff] damages,</u> including the  cost of lost goods, lost profits, costs of product cancellation and destruction, attorneys' and professional fees and losses related to business interruption, including loss of a 15-year licensing agreement with Pabst, and, ultimately, the buyout by Pabst of the Cafe Agave brand.

[Doc. 42 ¶ 109 (emphasis added).] Plaintiff does not dispute that it seeks the same damages for each of its claims, nor does plaintiff argue that the Amended Complaint identifies any damage type attributable solely to a fraud claim. This Court addressed the

7

same arguments on the same facts in the Memorandum and Order on the first motion to dismiss [Doc. 27 at 7-9.] The analysis remains the same.

In response to the instant Motion to Dismiss, plaintiff adds that Counts V and VII fall within the "public duty" exception to the economic loss doctrine. The "public duty" exception applies "[w]hen statutes or regulations impose an obligation on a person in the course of their profession or employment." *McClain ex rel. Rutledge v. James*, 453 S.W.3d 255, 267 (Mo. Ct. App. 2014), *citing B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, 724 S.W.2d 669, 671-73 (Mo. Ct. App. 1987). Although plaintiff contends that its amended complaint alleges defendants had a public duty to disclose information, the complaint does not allege the source of any such public duty. *Cf. B.L. Jet Sales, Inc. v. Alton Packaging Corp.,* 724 S.W.2d 669, 672 (Mo. App. E.D. 1987) (public duty created by federal aviation regulations). Rather, the duties plaintiff alleges appear based in the parties' relationship and contract.

### B. Other arguments

Because the Court will dismiss Counts IV-VII based on the economic loss doctrine, it need not address defendants' other arguments for dismissal on those counts.

### IV. Conclusion

Defendant's motion to dismiss will be granted in part.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions to dismiss [Docs. 47, 53, 54] are GRANTED in part, and Counts I, II, III, IV, V, VI, VII, and IX are DISMISSED.

Dated this  7th  day of February, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE